The UNITED STATES, Appellant,

v.

ARTHUR J. HUMPHREYS, INC., Appellee.

Customs Appeal No. 75–28.

United States Court of Customs and Patent Appeals.

April 1, 1976.

---

Rex E. Lee, Asst. Atty. Gen., Washington, D.C., Andrew P. Vance, Chief, Customs Section, Robert B. Silverman, New York City, for the United States.

Jonathan K. Bellsey, Los Angeles, Cal. (Glad, Tuttle & White, Los Angeles, Cal.), atty. of record, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

BALDWIN, Judge.

This is an appeal from the judgment of the Customs Court, 394 F.Supp. 1395, 74 Cust.Ct. 73, C.D. 4588 (1975), holding that certain fence sections, gates, fence posts, corner adapters and cleats are classifiable as "[w]ood fence pickets, palings and rails whether or not assembled into fence sections" under TSUS item 200.75, and as "[w]ood poles, piles and posts" under TSUS item 200.60. We affirm.

### The Importations

The goods are fence sections (classified by the Customs Service under TSUS item 207.00) and fence parts (classified under item 202.54) made of red cedar which have been treated. A complete understanding of the purpose and nature of the treatment requires an understanding of some of the characteristics of red cedarwood.

The record indicates that red cedar may be of several shades of reddish brown varying from a very pale to a relatively deep color. The natural pigment, however, is water-soluble and thus can be leached out of the wood during outdoor storage, which results in a cedar having a silver-gray color.

In order to prevent discoloration, the cedar is dipped in a watered-down latex paint or stain. This results in the application of water-insoluble iron oxide and burnt umber red pigments to the wood which imparts a color similar to the color of natural red cedar. Consequently, all of the cedar sec-

tions look alike even though the goods were composed of different shades of cedar and even though some of the natural pigment had been unevenly leached out.

It was discovered that the latex paints were subject to mold and mildew attack. In order to combat this, a small amount of phenyl mercuric acetate was added to the latex solution before its application to the wood. The phenyl mercuric acetate acts to kill green mold during storage. The importation is thus fence sections, fence parts and fence posts of red cedar which have been dipped in a solution of red stain and a fungicide.

### Statutory Provisions

Schedule 2.—Wood and Paper; Printed Matter
Part 1.—Wood and Wood Products
\* \* \* \* \* \* \*
Subpart A.—Rough and Primary Wood Products; Wood Waste
Subpart A headnotes:
\* \* \* \* \* \* \*
2. The provisions for wood products in items 200.60 (poles, piles, and posts), 200.65 (laths), 200.75 (fence pickets, palings, and rails), 200.80 (railroad ties), and 200.85 (shingles and shakes) cover such products whether or not they have been treated with creosote or other wood preservatives.

\* \* \* \* \* \* \*

Item 200.60 Wood poles, piles, and posts . . . . Free

\* \* \* \* \* \* \*

Item 200.75 Wood fence pickets, palings, and rails, whether or not assembled into fence sections . . . . . . . . . . . Free

\* \* \* \* \* \* \*

Subpart B.—Lumber, Flooring, and Moldings

Subpart B headnotes:

1. This subpart covers lumber, wood siding, wood flooring, wood moldings, and certain wood carvings and ornaments, including such products when they have been drilled or treated.

2. For the purposes of this part, the following terms have the meanings hereby assigned to them:

\* \* \* \* \*

(d) *Drilled or treated*: Drilled at intervals for nails, screws, or bolts, sanded or otherwise surface processed in lieu of, or in addition to, planing or working, or treated with creosote or other wood preservatives, or with fillers, sealers, waxes, oils, stains, varnishes, paints, or enamels, but not including antistain or other tempo-

rary applications mentioned in headnote 4 of this subpart.

\* \* \* \* \*
4. The treatment of lumber or other products provided for in this subpart with antistain or other temporary applications which serve only for the purpose of maintaining the products in their rough, dressed, or worked condition until installation or further manufacture shall not affect their classification under any of the provisions of this subpart.

\* \* \* \* \*

Lumber and wood siding, drilled or treated; and edge-glued or end-glued wood not over 6 feet in length or over 15 inches in width, whether or not drilled or treated:

\* \* \* \* \*

Item 202.54 Other . . . . . . . . . . . . . . . 5% ad val
\* \* \* \* \*

Subpart F.—Articles Not Specially Provided For, of Wood

Subpart F headnote:

1. This subpart covers all products of wood which are not provided for elsewhere in the tariff schedules.

Item 207.00 Articles not specially provided for, of wood 11.5% ad val.

### Proceedings Below

Upon review of the evidence of legislative intent, the Customs Court concluded that "[t]he use of pigment does not per se convert an article provided for in subpart A into an article provided for in subpart B." It was thus concluded that the fence sections, posts, gates, corner adapters and cleats are properly dutiable under items 200.60 and 200.75 as claimed because (1) the addition of pigment in a fungicide does not convert a fence section treated with it into an article of wood not specifically provided for; (2) the addition of a pigment does not convert a post to lumber for tariff or trade purposes; and (3) item 200.75, being more specific than basket provision 207.00, would prevail.

The Customs Court also concluded that, based upon the record and an admission by defendant in its answer, the imported fence sections along with the gates, cleats and corner adapters are within the ambit of item 200.75. This conclusion was further grounded upon the conclusion that the respective parts were sufficiently physically

processed to dedicate them in a commercial, practical sense to fence construction.

## OPINION

The government urges that the importer has not shown that the cleats, the corner adapters, and the stockade, western weave and criss-cross fence sections fall within item 200.75. To support such classification, the record must show that the goods are either fence pickets, palings or rails or assembled fence sections made of pickets, palings or rails.

◼ Not only has the government admitted that the fence sections, gates, cleats and corner adapters are dedicated to fence construction, but the physical exhibits, which may be relied upon by the court in determining the physical nature of the imports, support the Customs Court's conclusion that the goods are classifiable within items 200.75 and 200.60. Included within the exhibits are models of the western weave and stockade fence sections and illustrations of the western weave, stockade and criss-cross fence sections, gates, cleats and corner adapters. From the exhibits, the stockade fence sections appear as sections of pickets attached side-by-side. The western weave and criss-cross fence sections are comprised of flat, wide pieces of wood while the cleats are described as ½″ x 4″ x 6′ pieces and the corner adapters as 2″ x 4″ x 6′ pieces with a groove in one four-inch face. From this we hold that ample evidence exists to support the Customs Court's conclusion that the imports are fence pickets, palings, rails or assembled fence sections thereof.

◼ The imported articles have been dipped in what has been categorized as a latex stain containing a fungicide. We hold that this treatment does not remove the imported articles from subpart A.

1. See, for example, items 202.52, 202.53 and 202.54.

2. We need not decide whether or not the imported goods are "Rough and Primary Wood Products." As General Interpretative Rule 10(b) states:

◼ Appellant contends that only preservatives such as creosote, which are unpigmented, were intended to be included within subpart A. However, we agree with the Customs Court's conclusion that the use of a pigment does not per se convert an article provided for in subpart A into an article provided for in subpart B or subpart F. The Customs Court noted that lumber, wood siding, wood flooring, wood molding, wood carvings, etc., as covered by subpart B, are normally sold in board feet while the imported articles are sold in sections or by the piece.[1] This represents further evidence that the addition of a pigment does not convert a post to lumber.

It having been shown that the imported goods were posts or fence pickets, palings, rails or sections thereof, we *affirm* the decision of the Customs Court.[2]

For the purposes of these schedules—the titles of the various schedules, parts, and subparts and the footnotes therein are intended for convenience in reference only and have no legal or interpretative significance * *.